119 So.2d 400 (1960)
Lelia Padgett BAGLEY, Appellant,
v.
STATE of Florida, Appellee.
No. B-222.
District Court of Appeal of Florida. First District.
April 5, 1960.
*401 George A. Pierce, Jacksonville, for appellant.
Richard W. Ervin, Atty. Gen., and Odis M. Henderson, Asst. Atty. Gen., for appellee.
LEWIS, E. CLAY, Jr., Associate Judge.
The appellant appeals from the verdict and judgment of the Criminal Court of Record, in and for Duval County, Florida. The appellant was charged, by information, and convicted by a Jury of the crime of second-degree murder, for which she was sentenced to a term of years in prison. She has assigned 37 points of error.
There was evidence adduced in the case that the appellant shot and killed one Johnnie Ashley; that the deceased Johnnie Ashley roomed with appellant; there was living there also the fourteen year old son of the appellant, Walton Bagley; that Ashley was a butcher and kept a bunch of knives in the back of his station wagon, which he parked back of the home where they resided; that on August 30, 1958, the date of the homicide, Ashley was intoxicated; that prior to August 30, 1958, Ashley had threatened the two sons of the appellant with a knife. The trouble, which ended in the death of Johnnie Ashley, began with an argument between appellant, her son and Ashley. Walton Bagley walked into his mother's bed room; Ashley followed, told him if he didn't mind he might as well hit the road; appellant replied if anyone leaves it will be you (Ashley); Ashley said I do not think so and appellant replied well we will see about that and went to call Mr. Holsenbeck, who managed the apartments; appellant went into the office and tried to get Mr. Holsenbeck on the `phone; Ashley followed and started for appellant with a bottle; Walton jumped between them; Ashley hit Walton, knocked him on couch; Ashley hit Walton on left eye; Walton ran to bed room; Ashley followed, caught Walton, saying, I will kill you; Ashley grabbed Walton around head, started choking Walton; appellant came in, started screaming and trying to pull Ashley off Walton; appellant tried to *402 protect Walton; Ashley had Walton by throat, knocking him about with his fist and Ashley was holding Walton off the floor, saying I will kill you and then I will kill her; Ashley had Walton about foot, off the floor, right hand on Walton's neck; Walton screaming; Ashley beat Walton in face; Ashley had both hands around Walton's neck, holding him off of floor about one and one-half minutes, breath left him and everything turned dark; Ashley pretty intoxicated and staggering; Walton thought Ashley was trying to kill him; appellant thought that Ashley was trying to kill her son and herself; Ashley said I will go get my knives and kill both of you; Ashley tried to get gun that appellant had in her bed room; Walton was on Ashley's back; after a tussle appellant got possession of the shot gun; when she got possession of gun Ashley was going to get his butcher knives; Walton ran to the front of the house hollering for help; Ashley was raising sand and cursing on the front porch; appellant could see Ashley on front porch choking her son, Walton; appellant hollered to Ashley to leave Walton alone; Walton was begging Ashley to leave him alone; appellant started toward the front porch when she got in the door the gun went off into the floor; she opened the door and looked for her son, Walton, and the gun fired the second time, striking Ashley; appellant did not know where Ashley was when second shot fired; she was firing to scare Ashley; knew he would kill them if he got the butcher knives; after second shot she reloaded the gun as her only protection, as she was looking for Ashley to come back in with the knives and she was yelling to leave my boy alone; appellant fired the second shot, as Ashley was jumping off front porch; Ashley died from the gun shot wounds.
The foregoing is a resume of the testimony given at the trial by the appellant and her son, Walton, portions of which were corroborated by other witnesses.
Assignments of error, numbered 32 through 37, assign as error the charge given by the trial court concerning justifiable homicide and may be concisely stated as: "Did the Court err in its instruction to the Jury defining justifiable homicide?" We think so.
The Court gave the following charge to the Jury, as to justifiable homicide:
"Homicide is justifiable when committed by any person:
"1. When resisting any attempt to murder such person, or to commit any felony upon him,
"2. When committed in the lawful defense of such person, and there shall be a reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and there shall be imminent danger of such design being accomplished;
"3. When necessarily committed in attempting, by lawful ways and means to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully preserving and keeping the peace."
Section 782.02, Florida Statutes, 1957, F.S.A., defines justifiable homicide and provides, among other things, that:
"Homicide is justifiable when committed by any person in either of the following cases: (1) When resisting any attempt to murder such person, or to commit any felony upon him, or upon or in any dwelling house in which such person shall be; or (2) When committed in the lawful defense of such person of his or her husband, wife, parent, grandparent, mother-in-law, son-in-law, daughter-in-law, father-in-law, child, grandchild, sister, brother, uncle, aunt, niece, nephew, guardian, ward, master, mistress or servant, when there shall be a reasonable ground to apprehend a design to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being *403 accomplished; or (3) When necessarily committed in attempting by lawful ways and means to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace." (Italics by the Court.)
As will be noted, the trial Court in his charge on justifiable homicide failed to charge as to that portion of paragraph 2 of Section 782.02, Florida Statutes, F.S.A., which is italicized above.
We think there was sufficient evidence introduced to require a complete charge, explaining to the Jury each and every essential element of justifiable homicide. The given charge wholly ignored that part of subsec. 2 of Section 782.02, Florida Statutes, F.S.A., relative to a "homicide committed in the lawful defense of such person of his or her `child'". We think the appellant, from the evidence adduced, was entitled to an affirmative charge in accordance with the language of the statute. When the Court limited its charge on justifiable homicide, as it did, the accused was deprived of a lawful trial.
The law is settled that a defendant is entitled to have the Jury instructed on the law applicable to his theory of defense where there is evidence introduced in support thereof. In the instant case one of the defenses was justifiable homicide. See Motley v. State, 155 Fla. 545, 20 So.2d 798.
We recognize the fact that during the trial, there was no request by the appellant or her counsel for a specific charge on justifiable homicide, nor was there any objection made to the charge, as given. However, we hold that it is fundamental that when the trial Judge purports to give a charge on justifiable homicide, then every essential element of justifiable homicide, justified by any of the evidence, should be given.
This is not a case where the Court failed or neglected to charge on some phase of the evidence, which placed the burden on the defendant to request a more complete charge. This goes to the essence and entirety of the defense. The law can be stated in no better fashion than in the language of the statute. See Motley v. State, supra. The charge, as given, was misleading and was highly prejudicial to the appellant.
The Supreme Court of Florida, in Croft v. State, 117 Fla. 832, 158 So. 454, 455, in speaking on this rule, said, among other things, that:
"Where the trial court attempts to define the offense, for the commission of which an accused is being tried, it is the duty of the court to instruct the jury as to each and every essential element of the offense charged, and a charge attempting to define the offense which does not cover material elements of the offense is necessarily misleading and prejudicial to the accused. It is equivalent to directing the jury that it is not necessary for the state to prove any elements of the offense except those included in the definition given by the court."
And in Motley v. State, supra, the Supreme Court of Florida said [155 Fla. 545, 20 So.2d 800]:
"We will not dispose of this case under the harmless error statute. There is much at stake and the right of trial by jury contemplates trial in due course of the law. See Section 12, Declaration of Rights, Florida Constitution. For that reason, we will examine the propriety of the charge as applied to the facts of this case to see whether it correctly states the law of self defense. We have said that where the court attempts to define the crime, for which the accused is being tried, it is the duty of the court to define each and every element, and failure to do so, the charge is necessarily prejudicial to the accused and misleading. See Croft v. State, 117 Fla. 832, *404 158 So. 454. The same would necessarily be true when the same character of error is committed while charging on the law relative to the defense. We have not failed to consider the harmless error statute. However, the Crime Procedure Act, Sec. 920.05, F.S., '41 F.S.A., directs the granting of a new trial where the jury has been misdirected on the law."
The Court committed reversible error in its charge on justifiable homicide and since we must reverse this case for a new trial for the reasons hereinabove set forth, it is unnecessary to review appellant's other assignments at this time.
Reversed and remanded for a new trial.
WIGGINTON, Chief Judge, and STURGIS, J., concur.