539 So.2d 514 (1989)
Roland SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 86-3159.
District Court of Appeal of Florida, Second District.
February 24, 1989.
James Marion Moorman, Public Defender, and Deborah K. Brueckheimer, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Lauren Hafner Sewell, Asst. Atty. Gen., Tampa, for appellee.
LEHAN, Judge.
Defendant appeals from his conviction for second-degree murder. We agree with one of his contentions on appeal and reverse and remand for a new trial.
We discuss his following contentions: (1) those concerning various aspects of the testimony of the only surviving witness to the crime other than defendant; (2) that concerning questions to and answers from prosecution witnesses about what defendant did not say upon his arrest; (3) that *515 concerning the absence of a long form standard instruction to the jury on excusable homicide; and (4) that concerning the absence of a standard instruction to the jury on culpable negligence. For the reasons explained below, we reverse with regard to contention (3).
As to contention (1), for the following reasons we do not conclude that the trial court erred in declaring the witness a court witness and in admitting into evidence various prior statements of that witness:
(a) There was no error in declaring the witness a court witness. See Jackson v. State, 498 So.2d 406, 409 (Fla. 1986); Brumbley v. State, 453 So.2d 381, 384 (Fla. 1984).
(b) There was no error in the failure of the trial court to instruct the jury that certain of the prior statements of the witness were to be used by the state for impeachment. Defendant's attorney rejected the opportunity to have the jury so instructed.
(c) There was no error in admitting as substantive evidence other statements of that witness which had been sworn statements to the state attorney's office. See § 90.801(2)(a), Fla. Stat. (1987); Diamond v. State, 436 So.2d 364 (Fla. 3d DCA 1983). See also Delgado-Santos v. State, 471 So.2d 74, 78 n. 6 (Fla. 3d DCA 1985), aff'd, 497 So.2d 1199 (Fla. 1986).
(d) Nor was there error in the failure to exclude portions of those statements pertaining to defendant's prior drug use. Defendant's attorney made no motion to exclude those portions and failed to take advantage of an opportunity to participate in the framing of an instruction for the jury to not consider those portions. Also, there was an instruction by the trial court to the jury that those portions should not be considered as evidence of the crime with which defendant was charged.
As to contention (2), defendant contends that the state's questions during trial to, and answers from, three deputies who had been present at defendant's arrest were impermissible comments upon the exercise of defendant's constitutional right to remain silent. The questions and answers concerned the fact that defendant had not told the deputies at the time of his arrest that he was frightened of the victim, although defendant did testify about this at trial in his defense. However, we conclude that these questions and answers were not comments upon the exercise of defendant's right to remain silent. Defendant did not remain silent at his arrest; he made several spontaneous, exculpatory statements to the deputies about why he had shot the victim. The state's questions were aimed at pointing out the inconsistencies in defendant's exculpatory statements. No error occurred. See Anderson v. Charles, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980); Watson v. State, 504 So.2d 1267 (Fla. 1st DCA 1986), rev. denied, 506 So.2d 1043 (Fla. 1987). In contrast, Nixon v. State, 536 So.2d 391 (Fla. 4th DCA 1989) found reversible error in the state's questions to a defendant about whether he had given the same explanation of his behavior to the arresting officers as he gave at trial. The Nixon opinion does not specifically show whether the defendant in that case gave any explanation at the time of his arrest but indicates that he did not because it refers to his "initial silence." Also, the two cases cited in Nixon in support of the conclusion that there was an improper comment upon the exercise of defendant's right to silence were both cases in which defendant had remained silent at arrest. As explained in Anderson and Watson, that type of situation materially differs from the situation occurring here.
As to contention (3), defendant contends in effect that notwithstanding defendant's failure to request the long form standard jury instruction on excusable homicide or to object to the giving of only the short form instruction thereon, there was reversible, fundamental error from the trial court having given only that short form instruction.
The Florida Standard Jury Instructions in Criminal Cases include two definitions of excusable homicide. The so-called short form instruction is a part of the Introduction to Homicide jury instructions to be *516 read in all homicide cases. That instruction reads as follows:
EXCUSABLE HOMICIDE
The killing of a human being is excusable, and therefore lawful, when committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution and without any unlawful intent, or by accident or misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, without any dangerous weapon being used and not done in a cruel or unusual manner.
The long form, more explicit excusable homicide instruction is a part of the standard jury instructions concerning various different aspects of homicide cases. That instruction reads as follows:
EXCUSABLE HOMICIDE
An issue in this case is whether the killing of (victim) was excusable.
The killing of a human being is excusable if committed by accident and misfortune.
In order to find the killing was committed by accident and misfortune, you must find the defendant was:
1. a. doing a lawful act by lawful means and with usual care and
b. acting without any unlawful intent.
2. in the heat of passion brought on by a sudden provocation sufficient to produce in the mind of an ordinary person the highest degree of anger, rage or resentment that is so intense as to overcome the use of ordinary judgment, thereby rendering a normal person incapable of reflection.
3. engaged in sudden combat. However, if a dangerous weapon was used in the combat or the killing was done in a cruel or unusual manner, the killing is not excusable.
A "dangerous weapon" is any weapon that, taking into account the manner in which it is used, is likely to produce death or great bodily harm.
As this court indicated in Tobey v. State, 533 So.2d 1198 (Fla. 2d DCA 1988) this issue in a criminal case of whether or not there was fundamental error from the failure to give a proper jury instruction  in this case and in Tobey, an instruction on excusable homicide  can arise in different contexts, i.e., under different approaches as to why the instruction should have been given. For present purposes two contexts of that kind can be described as follows: (a) when a defense  in this case, excusable homicide  is presented on behalf of defendant by the offering of evidence in support thereof, and (b) when there is an alleged failure by the trial court to instruct accurately on the definition of an offense  in this case, on excusable homicide as a part of the definition of the lesser included offense of manslaughter.
We will decide this issue in each of those contexts. But first we note that this court has concluded that the short form instruction "may very well have been inherently misleading, because it appear[s] to inaccurately suggest that a killing can never be excusable if committed with a dangerous weapon"; the reason is that the jury could incorrectly conclude that that instruction's phrase, "without any dangerous weapon being used," qualifies the entire instruction. Blitch v. State, 427 So.2d 785, 787 (Fla. 2d DCA 1983). See also Kingery v. State, 523 So.2d 1199, 1205 (Fla. 1st DCA 1988) ("We agree that the instruction is misleading."). The correct conclusion is that the use of a dangerous weapon negates only the third alternative method (sudden combat) of excusable homicide. Kingery; Blitch.
As to context (a), we hold that there was in this case no fundamental error from the failure to give the long form excusable homicide instruction even though defendant had admittedly used a dangerous weapon thus calling into question the accuracy of the short form instruction as referred to above. There having been no objection to the giving of the short form excusable homicide instruction and no request for the long form instruction, any error in that regard was not preserved for appeal and, as we will further explain, was in our view not fundamental.
*517 There was evidence to support the defense of excusable homicide. Tobey states, "The failure to give an instruction on a defense encompassed within the evidence is fundamental error and reviewable notwithstanding the absence of a requested instruction or an objection." 533 So.2d at 1200. However, that statement, derived from Carter v. State, 469 So.2d 194, 196 (Fla. 2d DCA 1985), appears to have been clearly dicta. Tobey involved the defenses of excusable and justifiable homicide, and the opinion in that case points out that "correct and thorough" and "complete" excusable and justifiable homicide instructions had been given. Id.[1] To the extent that that dicta would seem to apply to the case at hand by referring to a failure to give the long form excusable homicide instruction as being fundamental error when, as here, defendant did not request that instruction, that defense was encompassed within the evidence, and the arguably inaccurate short form excusable homicide instruction had been given, we would not agree. In our view such a rule of fundamental error was not intended by Tobey and Carter as a general rule and would place an unrealistically severe burden upon trial judges concerning a matter which should properly be within the province and responsibility of defense counsel as a matter of trial tactics and strategy. See Smith v. State, 521 So.2d 106, 108 (Fla. 1988) ("The doctrine of fundamental error should be applied only in rare cases where a jurisdictional error appears or where the interests of justice present a compelling demand for its application"; while that Smith opinion makes no reference to a difference between context (a) and context (b) situations, the opinion appears to involve a context (a) situation). For those reasons we would not agree with that quoted statement in Tobey as a general rule of law. In any event, we hold in this context (a) that there was no fundamental error in the failure in this case to give the long form excusable homicide instruction. Whether or not the short form instruction is misleading, the matter of whether or not to emphasize to the jury the excusable homicide defense should be for the judgment of defense counsel. We are aware of no case holding otherwise in this context.
We certify the following question to the Florida Supreme Court as of great public importance:
WAS THE FAILURE TO GIVE THE LONG FORM INSTRUCTION ON THE DEFENSE OF EXCUSABLE HOMICIDE FUNDAMENTAL ERROR WHEN THE SHORT FORM EXCUSABLE HOMICIDE INSTRUCTION HAD *518 BEEN GIVEN, WHEN THE DEFENDANT HAD NEITHER REQUESTED THE LONG FORM INSTRUCTION NOR OBJECTED TO THE GIVING OF THE SHORT FORM INSTRUCTION, AND WHEN THAT DEFENSE WAS SUPPORTED BY THE EVIDENCE?
As to context (b), a jury instruction on manslaughter is incomplete if the jury is not also instructed on both excusable homicide and justifiable homicide. The reason is that the offense of manslaughter is a residual offense which may exist when the degrees of homicide do not exist and a killing is not justifiable or excusable. See Hedges v. State, 172 So.2d 824 (Fla. 1965). In this case the trial court followed the standard jury instruction for manslaughter and had previously read to the jury the instruction on justifiable homicide and the short form instruction on excusable homicide. We hold in this context (b) that the failure to give the long form excusable homicide instruction was fundamental error. Alejo v. State, 483 So.2d 117 (Fla. 2d DCA 1986). The giving of that instruction promotes the opportunity of the jury to exercise its inherent pardon power. See State v. Abreau, 363 So.2d 1063 (Fla. 1978).
There is considerable disagreement and lack of clarity in this area of the law, as we will now undertake to explain.
As noted above, the short form excusable homicide instruction can be, and has been, construed to be misleading. In addition, the reading of the short form excusable homicide and the justifiable homicide definitions during the Introduction to Homicide instruction, without repeating the definitions when the manslaughter instruction is read, has been held to be reversible error in a case involving a manslaughter conviction. See Ortagus v. State, 500 So.2d 1367 (Fla. 1st DCA 1987).
In contrast, in a case like this involving a second-degree murder conviction, the Fifth District Court of Appeal concluded that the failure "to fully and correctly instruct the jury concerning the definitions of excusable and justifiable homicide, in conjunction with [the] instruction on manslaughter" was "harmless error, and (though not objected to) not fundamental error." Rojas v. State, 535 So.2d 674 (Fla. 5th DCA 1988). Rojas followed Garcia v. State, 535 So.2d 290 (Fla. 3d DCA 1988; on rehearing Dec. 27, 1988) which also involved a second-degree murder conviction. In Garcia the Third District Court of Appeal found harmless error in the trial court's refusal of defendant's request to include the definitions of justifiable and excusable homicide when re-instructing on manslaughter.[2]
Yet in direct contrast to Garcia and in significant contrast to Rojas, the First District Court of Appeal, in another case involving a second-degree murder conviction, found to be reversible error the same omission *519 which was found in Garcia to be harmless error. Walker v. State, 520 So.2d 606 (Fla. 1st DCA 1987). Fundamental error was not in issue in Walker.
It should also be noted that courts have found no fundamental error in this type of omission in the manslaughter instruction when a defendant was convicted of first-degree murder. See, e.g., Squires; Tobey. Indeed, in Banda a first-degree murder conviction case in context (b), the Florida Supreme Court stated that the omission of the definitions of excusable and justifiable homicide definitions from the manslaughter instruction was not prejudicial; the reason given was that "there was no evidence which would have supported either defense," 536 So.2d at 223, a reason which, however, connotes context (a) referred to above. Similar context (a) type reasoning was used to support a conclusion of no fundamental error in Segars v. State, 537 So.2d 1052 (Fla. 3d DCA 1989), a context (b) case, where defendant was charged with second-degree murder and convicted of manslaughter.
It may be argued that Squires calls for the result we reach in this case. In Squires the supreme court stated, "Where defendant is convicted of first-degree murder an error or omission in an instruction on the lesser included offense of manslaughter is not fundamental error." Id. at 211. That statement could be taken to imply, as Alejo held, that where a defendant, as in this case, is convicted of second-degree murder, an error or omission in an instruction on the lesser included offense of manslaughter is fundamental error. Yet in State v. Bryan, 287 So.2d 73 (Fla. 1973), the supreme court found no fundamental error in an incomplete manslaughter instruction (where the omission concerned the definition of culpable negligence, not excusable or justifiable homicide) when the defendant was convicted of second-degree murder. And in City of Orlando v. Birmingham, No. 72,402 (Fla. Jan. 19, 1989) [14 FLW 33], the supreme court stated, "[I]n criminal cases where the alleged error is giving or failing to give a particular jury instruction, this Court has refused to allow parties to object to the instruction for the first time on appeal." While Birmingham was a civil case, its above statement is dicta, and the supreme court again made no reference to a difference between contexts (a) and (b), it appears to be a category (b) case.
Nonetheless, Castor v. State, 365 So.2d 701, 703-04 (Fla. 1978), implies that there is fundamental error in omitting the definitions of excusable and justifiable homicide from the initial manslaughter instruction, although that case found no fundamental error in such an omission during the re-instruction, as opposed to initial instruction, on manslaughter in a case involving a conviction for third-degree murder.
We certify the following question to the Florida Supreme Court as of great public importance:

*520 WHEN A DEFENDANT WAS CONVICTED OF SECOND-DEGREE MURDER, WAS THERE FUNDAMENTAL ERROR WHEN THE TRIAL COURT HAD FOLLOWED THE STANDARD JURY INSTRUCTIONS AND GIVEN THE SHORT FORM INSTRUCTION ON EXCUSABLE HOMICIDE AT THE OUTSET OF THE HOMICIDE INSTRUCTIONS AND HAD GIVEN NO FURTHER INSTRUCTION ON EXCUSABLE HOMICIDE IN CONNECTION WITH ITS INSTRUCTION ON MANSLAUGHTER?
As to contention (4), defendant contends that the trial court erred in refusing defendant's request for a jury instruction which would include culpable negligence as one of the alternative means of committing manslaughter. The trial court's basis was that there was no evidence of culpable negligence. We agree with the trial court and affirm. See Reed v. State, 531 So.2d 358, 360 (Fla. 5th DCA 1988).
REVERSED AND REMANDED FOR A NEW TRIAL.
RYDER, A.C.J., and DANAHY, J., concur.
NOTES
[1] Carter contained an essentially identical statement, although in Carter the defendant had requested a standard jury instruction which the trial court then read inaccurately. The statement in Carter derived from two cases  Rodriguez v. State, 396 So.2d 798 (Fla. 3d DCA 1981) and Bagley v. State, 119 So.2d 400 (Fla. 1st DCA 1960).

In Rodriguez, the trial court had denied the defendants' request for a jury instruction on a particular defense. On appeal the state contended that the defendants could not raise that issue because they had not formally objected to the trial court's refusal to give the requested instruction. In disagreeing with the state's argument, the appellate court noted that in Bagley it had been held that the failure to give a complete and accurate instruction on a certain defense was fundamental error, reviewable in the complete absence of a request or objection.
In Bagley the trial court had read to the jury an incomplete instruction on the defense of justifiable homicide. The appellate court recognized that the defendant had not requested a specific charge on that defense nor objected to the charge as given. Nevertheless the court held that "it is fundamental that when the trial Judge purports to give a charge on justifiable homicide, then every essential element of justifiable homicide, justified by any of the evidence, should be given." 119 So.2d at 403.
Thus, while it is true that Bagley held that the failure in that case to give a complete and accurate jury instruction on a defense was fundamental error, reviewable in the absence of a request or objection, the Bagley situation (where the court read the instruction, without request, but did not read the complete instruction) is distinguishable from other situations like that in this case where no request was made for a particular instruction and no such instruction was read.
Although Rodriguez, Carter, and Tobey each contained a statement about fundamental error in the failure to read a jury instruction on a defense despite the absence of any request for that instruction, none of those cases concerned that particular situation. In Carter and Rodriguez there had been requests for the instruction and in Tobey the instruction had been actually read.
[2] The reasoning of Garcia was that because the jury, in convicting defendant of second-degree murder, found that he had acted with a depraved mind, the jury could not have concluded that he had acted justifiably or excusably. However, we respectfully disagree with the application of that reasoning. We do not disagree that the fact that the jury found that defendant had acted with a depraved mind means that the jury could not have concluded that he had acted justifiably or excusably. Nonetheless, we do not conclude that that would mean that the jury could not have convicted defendant of manslaughter. Indeed, the conclusion that the jury thereby found no defense to manslaughter means that the jury could have convicted defendant of manslaughter. Thus, it appears to us that the Garcia conclusion is essentially that the fact that the jury convicted defendant of one offense meant that it would not have convicted him of an offense one step lesser if the jury had been correctly instructed on that lesser offense. We would disagree with that conclusion, especially having in mind a jury's inherent pardon power. As is stated in Abreau, 363 So.2d at 1064, "the failure to instruct on the next immediate lesser-included offense (one step removed) constitutes error that is per se reversible."

Abreau was concerned with giving the jury "a fair opportunity to exercise its inherent `pardon' power... ." Id. at 1064. Earlier in the Abreau opinion the court referred to a failure to instruct on an offense one step removed from the offense charged, but the remainder of the opinion does not specify whether the court is discussing instructions on offenses which are one or two steps removed from the offense charged or from the offense on which the jury convicted defendant. The explanation and logic of Abreau would seem to support the latter interpretation. That is, if the jury did not receive correct instructions on the lesser offense one step removed from the offense for which the jury convicted defendant, whether the conviction was for the offense charged or for a lesser-included offense, "it is impossible to determine whether the jury, if given the opportunity, would have `pardoned' the defendant to the extent of convicting him on [the offense incorrectly instructed upon]... ." Id.
This interpretation of Abreau was supported by the Florida Supreme Court's analysis in its subsequently withdrawn opinion in Banda v. State, No. 69,102 (Fla. July 14, 1988) [13 FLW 451], where the court stated that the failure to define excusable and justifiable homicide in conjunction with the manslaughter instructions was not fundamental error and that "[e]ven if an objection had been made, appellant would not prevail because he was convicted of an offense greater than the least of the offenses correctly instructed," citing Abreau. However, the court withdrew that opinion and substituted an opinion finding that the lack of an instruction on justifiable and excusable homicide was harmless because there was no evidence which would have supported either defense. Banda v. State, 536 So.2d 221 (Fla. 1988). This reasoning, which was also used by the Rojas court, seems applicable not to the issue of complete manslaughter instructions [context (b)] which was involved in Banda and in Rojas but to the issue of instructing on defendant's defense [context (a)].
We also respectfully disagree with the notation in Rojas of conflict with Spaziano v. State, 522 So.2d 525 (Fla. 2d DCA 1988), as Spaziano was modified by Tobey. Spaziano was a first-degree murder case and was modified by Tobey through Tobey's conclusion that there had been no fundamental error in giving an incomplete instruction on manslaughter by failing to join with the manslaughter instruction an accurate instruction on justifiable and excusable homicide because defendant was convicted of an offense two steps greater than the offense of manslaughter. Tobey followed Banda, 13 FLW 451; Squires v. State, 450 So.2d 208 (Fla. 1984); and Abreau in that regard.