545 So.2d 857 (1989)
Kaysie B. DUDLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 70014.
Supreme Court of Florida.
June 15, 1989.
*858 Richard N. Watts, St. Petersburg, for appellant.
Robert A. Butterworth, Atty. Gen., and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Kaysie B. Dudley appeals her conviction for first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm Dudley's conviction but find harmful error occurred in the sentencing phase, which requires us to vacate Dudley's sentence of death and remand for a resentencing proceeding before a new jury.
Dudley, then twenty-two, was convicted of the first-degree murder of an elderly woman who had discharged Dudley's mother from her employ as a companion several days previously. Dudley's mother and boyfriend, Michael Sorrentino, also participated in this robbery and murder. By her own admission, Dudley and Sorrentino went to the victim's home intending to steal several rings. She acknowledged her participation in the crime to the extent that she engaged in a physical struggle with the victim and attempted to choke the victim with her belt but stated she left the room when Sorrentino took over choking the victim and returned only after the victim's throat had been slit. Dudley stated that Sorrentino cut the victim's throat with a knife she loaned him. The crime scene investigation corroborated Dudley's statements and revealed Sorrentino's fingerprints as well as a ring belonging to Dudley which was discovered under the victim's body. Dudley told detectives that her mother purchased a replacement ring for the one Dudley had lost should she be questioned about it.
During the presentation of its case, the state requested that the court make Dudley's former live-in boyfriend, Robert Bennett, a court witness because he had previously given inconsistent statements and the state could not vouch for his testimony. The court heard Bennett's proffered testimony in which he could not remember a conversation between Dudley and her mother who had discussed "knocking off the old bat and stealing her rings." The state asserted that, during the investigation, Bennett told a detective and an assistant state attorney that he heard the two women discuss "knocking off the old bat and stealing her rings," and, further, that he had discussed what he had overheard with one of Dudley's coworkers, Cindy Echols. The trial court granted the state's motion and allowed Bennett to testify as a court witness.
In his testimony before the jury, Bennett denied recalling any conversation that he had overheard relating to a plan to kill the victim but acknowledged overhearing a conversation concerning possible theft of rings. The state then introduced Bennett's prior inconsistent statement through the testimony of the detective and Cindy Echols. The latter testified that Bennett told her that Kaysie and her mother were "going to kill the old lady and use Michael Sorrentino as a scapegoat, to drive the getaway car," and that they were "going to rip her off for those rings and money *859 and to steal from her." Echols also testified that Dudley admitted that Bennett had overheard her conversation with her mother. When this inconsistent-statement testimony was received, the judge instructed the jury that the statements made by Bennett could only be considered as they affected Bennett's credibility, but could not be considered as substantive evidence of Dudley's guilt. However, the state, in its final argument to the jury and in its argument before the judge, argued the prior inconsistent statement as substantive evidence, asking that the testimony be considered in reaching a recommendation of sentence and imposition of sentence.
The jury found Dudley guilty of first-degree murder and, by a vote of nine-to-three, recommended imposition of the death penalty. The trial judge imposed the death penalty, finding the following four statutory aggravating factors: (1) heinous, atrocious, and cruel; (2) cold, calculated, and premeditated; (3) committed during a robbery; and (4) committed for financial gain; and one mitigating factor, specifically, Dudley's past medical and psychological problems.
The one major issue requiring our consideration concerns the calling of Robert Bennett as a court witness and the presentation by the state of his prior inconsistent statements as substantive evidence. Dudley argues that this evidence was so prejudicial that it mandates reversal for a new trial. The law is clear that, although a prior inconsistent statement may be used to impeach the credibility of a witness, a prior inconsistent statement made by the witness about what another person told him is hearsay and cannot be used as proof of the facts contained therein. See C. Ehrhardt, Florida Evidence § 801.2 (2d ed. 1984). The state, relying primarily on Diamond v. State, 436 So.2d 364 (Fla. 3d DCA 1983), argued to the trial judge that section 90.801(2)(a), Florida Statutes (1985), allows a prior inconsistent statement to be received as substantive evidence if the statement was made under oath subject to the penalty of perjury at a hearing or other proceeding or in a deposition, asserting he gave this statement in another proceeding. The question is not controlled by Diamond, but by our decision in State v. Delgado-Santos, 497 So.2d 1199.(Fla. 1986), approving 471 So.2d 74 (Fla. 3d DCA 1985). Accord Kirkland v. State, 509 So.2d 1105 (Fla. 1987). In Delgado-Santos, we held that this type of law enforcement investigation and inquiry was not an "other proceeding" under the code and, consequently, section 90.801(2)(a) did not apply. There is no question that the state presented and used these prior inconsistent statements as substantive evidence both before the jury and before the judge. In fact, the state attorney commented at sentencing: "It was ruled that testimony was admitted as substantive evidence and was not strictly impeachment evidence of Mr. Bennett."
In a similar situation, the First District Court of Appeal, in Austin v. State, 461 So.2d 1380 (Fla. 1st DCA 1984), found that, although a witness's hostility towards the parties may justify the trial court's exercise of discretion in calling the witness as a court witness, to call the witness only to elicit a prior unsworn statement for the purpose of proving the truth of the prior statement is error. The district Court stated:
Under the circumstances of this case, it was impermissible to use the expedient of calling [the witness] as a court witness under Section 90.615 for the purpose of eliciting his prior inconsistent statement either for impeachment purposes or as substantive evidence. To conclude otherwise would permit indirectly that which may not be done directly.
Id. at 1383. We agree and find that conclusion properly applies to this case. Our review of the record demonstrates that the state sought the court to call Bennett as a court's witness solely for the purpose of presenting Bennett's prior inconsistent statements to prove the truth of these statements made to the investigators and to the witness Echols. Although limiting instructions were given to the jury, the evidence was used by the state as substantive evidence  not in its limited impeachment *860 capacity. Admission of this evidence was clear error.
We must next consider whether admission of Bennett's statements was prejudicial to (1) Dudley's conviction of first-degree murder and (2) the imposition of the death sentence. Given Dudley's own admission that she attempted to strangle the victim and provided Sorrentino with the knife, we find beyond any reasonable doubt that the other admissible evidence supports her conviction of first-degree premeditated and felony murder; consequently, in the conviction phase, the error was harmless. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
On the other hand, in the sentencing phase the inadmissible evidence was the major evidence which established the aggravating circumstance that this crime was a clear, calculated, prearranged plan to kill the victim by Dudley. We are unable to find that the error in this instance was harmless because of the argument and use of this evidence to emphasize the aggravating circumstance that this murder was cold and calculated under the provisions of section 921.141(5)(i), Florida Statutes (1985). Applying the harmless error test that the state must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction," DiGuilio, 491 So.2d at 1138, and taking into account the one mitigating circumstance found by the trial judge, we are unable to find the error harmless and must vacate Dudley's sentence of death and remand this cause for a new sentencing proceeding before a new jury.
Dudley also challenges the finding that this crime was especially heinous, atrocious, and cruel. For assistance in resentencing, we address this issue and find that the circumstances surrounding the victim's death by strangulation and having her throat cut, as described by the medical examiner, and her apparent struggle for life while being accosted in her own home support application of this aggravating circumstance.
For the reasons expressed, we affirm Dudley's conviction but remand this cause for resentencing before a new jury.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT and KOGAN, JJ., concur.
GRIMES, J., concurs with an opinion, in which EHRLICH, C.J., and SHAW, BARKETT and KOGAN, JJ., concur.
GRIMES, Justice, concurring.
Clearly, Bennett's prior inconsistent statement did not qualify for admission as substantive evidence under section 90.801(2)(a). It was also inadmissible as impeachment because Bennett's failure to remember the conversation relating to a plan to kill the victim did not constitute adverse testimony as contemplated by section 90.608(2). As explained in Austin v. State, 461 So.2d 1380, 1383 (Fla. 1st DCA 1984):
The fact that a witness may be hostile or unwilling does not mean that he is adverse. See Ehrhardt, Florida Evidence § 608.2, p. 299 (2d Ed. 1984). In order to be regarded as adverse under this section, the witness must give testimony prejudicial to the cause of the party calling him. The fact that he simply fails to give the testimony expected of him and that the testimony was not as beneficial as a prior statement is not sufficient.
Therefore, the admission of Bennett's inconsistent statement was erroneous under any theory. The state was not entitled to place it before the jury under the guise of first having Bennett declared to be the court's witness.
EHRLICH, C.J., and SHAW, BARKETT and KOGAN, JJ., concur.