928 So.2d 386 (2006)
Valgean D. BRITTON, Appellant,
v.
STATE of Florida, Appellee.
No. 5D04-1040.
District Court of Appeal of Florida, Fifth District.
April 7, 2006.
*387 James S. Purdy, Public Defender, and Marvin F. Clegg, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Bonnie Jean Parrish, Assistant Attorney General, Daytona Beach, for Appellee.
LAWSON, J.
Valgean D. Britton, ("Britton"), appeals her judgment and sentence for manslaughter with a knife[1] for the stabbing death of her husband, ("the decedent"). The single issue raised on appeal is whether the trial court erred in excluding testimony about an incident that occurred almost three years before the stabbing, during which the decedent is alleged to have threatened two men by saying: "Don't be laughing at me. I'll blow your head off."[2] We affirm.
At trial, Britton admitted to stabbing her husband, but claimed self-defense. In support of her self-defense claim, Britton and three independent defense witnesses testified at length regarding multiple prior incidents of violence by the decedent against Britton.[3] With respect to the excluded evidence, however, the trial judge *388 found that the unfair prejudicial effect of the evidence substantially outweighed its probative value[4] considering the prior incident's remoteness in time,[5] the lack of connection between the incident and the crime charged, and the speculative nature of "any real connection whatsoever as far as any apprehension in her [Britton's] mind."
When addressing a defense proffer of third-party testimony regarding specific acts of violence by a victim, a trial court is required to consider "the need to limit evidence of specific acts [of violence] because, inter alia, a jury may tend to give the evidence too much weight, or it may sidetrack the jury's focus." State v. Smith, 573 So.2d 306, 318 (Fla.1990). Therefore, even where a proper predicate is laid showing that the defendant was aware of the prior act of violence, "corroborative evidence should be admitted cautiously." Id.
In this case, Britton told police officers prior to her arrest that she knew the decedent was not carrying a weapon when she stabbed him. Further, the defense presented no evidence that the decedent had ever threatened Britton with a gun. Additionally, Britton testified that she did not think about any of the decedent's past acts of violence prior to stabbing him. In fact, she even testified that she did not fear her husband at all because of his past violence. Rather, the only thing that caused her fear on the morning of the stabbing was the fact that he would not stop striking her and had a "rage in his eyes."[6] In light of these facts, the threat that the decedent is alleged to have uttered to two men almost three years earlier does not seem to have had any relevance to Britton's state of mind on the morning of the stabbing. Given the proffered testimony's lack of probative value, and the possibility of prejudice or confusion had it been admitted, we find the trial court was well within its discretion to exclude the evidence.
Alternatively, Britton argues that even if this testimony was properly excluded as part of her direct case, she should have been allowed to use it after the State "opened the door" by calling the decedent's employer to testify about the decedent's reputation in the community for peacefulness.[7] While we agree that the trial court erred by not allowing the defense to cross-examine the State's rebuttal witness regarding his knowledge of specific acts of violence by the decedent,[8] we *389 recognize the defense accomplished the same end by securing an admission from the witness that he really did not know about the decedent's reputation outside of the workplace. The witness also admitted on cross-examination that he knew nothing about the decedent's home life, and never socialized with him away from the work setting. In light of these concessions, and the extensive testimony from multiple witnesses regarding the decedent's violence outside of the work setting, we find no reasonable possibility that the error contributed to the conviction. See generally State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
AFFIRMED.
ORFINGER, J., concurs.
TORPY, J., concurs specially, with opinion.
TORPY, J., concurring specially.
I concur with the majority's result and part of its opinion. I think the lower court committed error in excluding the evidence about the "shotgun incident" at both procedural phases of the trial. Although I am constrained to agree that the errors were harmless, I wish to expound upon the analysis of the majority on this issue.
Appellant's self-defense theory involved her contention that her husband reacted violently whenever she indulged in crack cocaine binges away from home, especially when she was in the company of other men. According to Appellant, as long as she smoked crack at home, her husband was happy and non-violent. Indeed, her husband allegedly supplied her with crack. When she "partied" at crack houses, however, her husband would react violently towards her out of jealousy.
The shotgun incident occurred after Appellant had been on a crack binge for several days. Apparently, Appellant was dropped off at her home by a man who resided in the same complex. When her husband discovered the identity of the man who had given her a ride, he assumed a romantic involvement between the two. As a result, he became enraged, went to the man's apartment and threatened to shoot him with a shotgun.
Throughout their tumultuous six-year marriage this violent course of conduct, provoked by Appellant's drug use at crack houses, continued.
Under Appellant's account of the killing of her husband, she had once again been on a several-day crack and alcohol binge with unnamed people. She knew from past experience that her husband would be angry with her. While walking home in the early morning, she encountered a male stranger from whom she obtained a cigarette. The male stranger began to walk with her towards her home when they unexpectedly came face-to-face with Appellant's husband on the side of the road. According to Appellant, her husband became enraged at the sight of Appellant in the company of a male and began to attack her with his fists at which time she stabbed him once in the chest.
Clearly, this evidence of the earlier shotgun incident was relevant and material because it tended to prove the reasonableness of Appellant's apprehension. As Professor Ehrhardt explains in his treatise on evidence:
When a criminal defendant alleges self-defense, evidence of the victim's character trait of violence may be admissible for two purposes.[[1]] . . .

*390 . . . .
The second purpose for which evidence of the victim's violent or aggressive character is admissible when an accused claims self-defense is to prove that the accused was reasonably apprehensive of the victim and that the defensive measures of the accused were reasonable. In this situation, the evidence is being offered to prove the defendant's state of mind, that is, the reasonableness of the defendant's belief concerning imminent danger, rather than the conduct of the victim. As a foundation for the admission of evidence for this purpose, there must be some evidence of an overt act by the victim about the time of the event which reasonably indicated a need for the defendant to act in self defense, and there must be evidence that the accused knew of the victim's acts of violence or aggression. The admissibility of this evidence to establish the accused's apprehension does not violate the policy of section 90.404 which excludes character evidence when it is offered to prove conduct. In this situation, the evidence is offered to prove the reasonable apprehension or state of mind of the accused rather than to prove that the victim actually was the first aggressor.
C. Ehrhardt, Florida Evidence § 404.6 (2005 ed.) (original footnotes omitted). When evidence is offered for this purpose, it may be in the form of specific instances of conduct. Hedges v. State, 667 So.2d 420 (Fla. 1st DCA 1996); Smith v. State, 410 So.2d 579 (Fla. 4th DCA 1982). As a predicate for the admission of this evidence, it must be established that the accused was aware of the incident. State v. Smith, 573 So.2d 306, 318 (Fla.1990).[2]
The majority concludes that evidence of the shotgun incident was properly excluded under section 90.403 because of its remoteness in time and circumstance. I disagree with this rationale for exclusion of the evidence because both incidents involved similar circumstances and a pattern of conduct that persisted throughout the parties' six-year marriage. In my view, the probativeness of this evidence was not "substantially outweighed," by the danger of unfair prejudice. Although the trial court's discretion is broad in applying section 90.403, here, in my view, the trial judge abused his discretion in excluding the evidence.
Even if this instance of violent conduct of the victim was not admissible in the defense's case-in-chief, I agree with the majority that the lower court erred in limiting the defense when it attempted to cross-examine the State's witness. Again, Professor Ehrhardt addresses this issue:
During cross-examination of a witness who testifies to a person's reputation for a particular character trait, it is proper to test the sufficiency of the witness's knowledge of the reputation by questioning *391 the witness about events and matters which were being discussed in the community concerning the individual. In discussing the cross-examination of character witnesses, the court in Fine v. State [70 Fla. 412, 418, 70 So. 379, 381 (1915) ] stated:
[W]here a witness is asked what the reputation of a person is for peace and quiet, he is called upon to tell what opinion is generally entertained of such person by those acquainted with him, and in testing the credibility of such witness it is permissible to inquire into the rumors and reports of particular transactions upon which he bases his own conclusions as to the reputation of the person inquired about. . . . Such examination is permitted only for the purpose of testing the credibility of the witness testifying to the good character of the person inquired about, and not as evidence affecting the latter's character.
This examination can include reference to matters that would not otherwise be admissible, e.g., arrests. Obviously, these matters must be relevant to the character trait testified to on direct examination. For example, a witness who testifies that the defendant in a manslaughter prosecution has a good reputation as a peaceful and law-abiding citizen, can be asked on cross-examination if the witness has heard that the defendant has committed specific acts of violence. If the witness has not heard the comment and speculation which resulted from those acts, the jury may doubt whether the witness is capable of giving reliable testimony as to the person's reputation.
Ehrhardt, supra, § 405.1 (footnote omitted).
The trial court's errors notwithstanding, I agree that we should affirm because the errors were harmless beyond a reasonable doubt.
Appellant met her husband on the street in the early morning hours while he was on his way to work. She knew he would be angry with her, yet, she was walking home at a time and place where an encounter might occur. By her own admission, she carried a knife in her pocketthe kind with a locking blade. After stabbing her husband, she discarded the knife in the side yard of a house some 70 yards from the body. She knocked on the door of a residence and summoned authorities. When police arrived, and after they concluded that the victim was dead, she concocted a story about a vaguely described male who had allegedly fought with the victim, stabbed him and fled on foot. When she repeated the story for various police officers and investigators, inconsistencies in her story became apparent.
The self-defense theory was first suggested by police interrogators hours after Appellant had repeatedly blamed the crime on an unknown, non-descript assailant. Interrogators suggested self-defense as a psychological ploy to induce Appellant to admit that she had stabbed her husband. When she finally admitted that she had stabbed him, her version of the events was vague and illogical.
When she testified at trial, her account was inherently implausible and inconsistent with the accounts she had given to police. She said that she encountered her husband without warning, even though he was walking in the opposite direction on the street. Allegedly, her husband started hitting her immediately, even though she was still in the company of the unidentified man. She said she was fleeing from him while he was hitting her in the back of the head, yet, she stabbed him in the chest. Finally, she said the knife was folded in her pocket when he attacked her, but she *392 provided no logical account explaining how she thwarted the attack by reaching into her pocket, opening the knife, which would have taken two hands, and stabbing the physically superior man in the chest.
The physical evidence was also inconsistent with her account. She had no apparent injuries, despite having been allegedly hit repeatedly in the face with a closed fist. The victim's body showed no trauma other then the knife wound and a facial abrasion consistent with the victim's fall. No defensive wounds or injury to his hands were discovered.
Although the excluded evidence was relevant, it was largely cumulative. Appellant testified in detail about numerous past incidents where she had been beaten by her husband. Several witnesses (including her preacher, nine-year-old daughter and a friend) corroborated her testimony.
Having thus considered the effect of the error in light of the other evidence, I concur with the majority that the error was harmless beyond a reasonable doubt.
NOTES
[1] §§ 782.07, 775.087, Fla. Stat. (2004).
[2] The two men would have testified that the decedent was holding a shotgun when he made the threat, but that he never pointed it at them. Instead, he immediately turned and retreated without incident.
[3] See Johnson v. State, 718 So.2d 848 (Fla. 5th DCA 1998) (noting evidence of the victim's prior acts of violence are generally admissible in support of the self-defense theory when known to defendant at the time of the alleged crime to show the defendant's state of mind and the reasonableness of defendant's apprehension and actions).
[4] § 90.403, Fla. Stat. (2004).
[5] The judge expressly stated that he would not exclude the evidence based solely upon the prior incident's remoteness in time to the stabbing.
[6] According to Britton, she had disappeared on a several-day cocaine binge before returning on the morning of the stabbing. This was, according to Britton, a somewhat regular occurrence. It was also the event that had historically precipitated the decedent's violence against her. Britton testified that when she would disappear on a drug binge her husband would generally strike her several times upon her return, after which they would "make up." This had happened, according to Britton, about three or four times over a three-year period. Because of this history, Britton testified she anticipated that her husband would strike her when she returned on the morning of the stabbing.
[7] See § 90.404(1)(b)2, Fla. Stat. (2004) (allowing prosecution in a homicide case to offer "[e]vidence of a character trait of peacefulness of the victim . . . to rebut evidence that the victim was the aggressor").
[8] See Cornelius v. State, 49 So.2d 332 (Fla. 1950) (recognizing the purpose of cross-examination is to enlighten the jury as to whether the witness actuallyas a matter of fact knows the general reputation of the defendant and to place the jury in a better position to pass upon the credibility of the witness' testimony.)
[1] The first purpose (not applicable here) is to show that the victim was the aggressor. The only permissible form of evidence that may be offered for this purpose is reputation evidence. § 90.405(1), Fla. Stat. (2004). Because the accused's state of mind is not the issue for which the evidence is offered, it is not necessary that the accused be aware of the victim's reputation. Dwyer v. State, 743 So.2d 46, 48 (Fla. 5th DCA 1999).
[2] The State argues that this predicate was lacking and urges that we affirm because the error was not preserved. I disagree. The trial court granted the State's motion in limine based on the State's argument that the prior incident was too remote, not that Appellant lacked knowledge of the incident. Because of the procedural posture of the case at the time of the ruling by the lower court, to preserve the issue for review, the defense was not called upon to lay a predicate for the admission of the evidence, only to proffer the substance of the excluded evidence. § 90.104(1)(b), Fla. Stat. (2004).